UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MICHAEL PUTHUFF,<br><br>    Petitioner,<br><br>v.<br><br>KENT CLARK,<br><br>    Respondent. | No. 2:18-CV-02120 TLN DB<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Anthony Puthuff, a state prisoner, proceeds pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of convictions entered on April 10, 2015 in the Butte County Superior Court. Petitioner was convicted of assault with a deadly weapon and infliction of great bodily injury, and he admitted prior convictions. Petitioner now asserts that the following claims entitle him to habeas relief: (1) ineffective assistance of appellate counsel; (2) denial of right to fair trial when trial court admitted character evidence to show that he did not act in self-defense; and (3) jury instructional error. For the reasons set forth below, this Court recommends denying the petition for habeas relief.

## BACKGROUND

**I. Facts Established at Trial**

The California Court of Appeal for the Third Appellate District provided the following summary of the facts presented at trial:

1

The victim, Bradley Stricklin, testified that he was an off-duty employee (doorman/bouncer) at Riley's Bar and Grill in Chico on the night of the crime. He was at Riley's drinking and watching a football game along with another off-duty employee, Anthony Jones. Stricklin noticed that a patron who had been kicked out of the bar because he was too intoxicated was trying to get back in. The patron was being aggressive with the doorman, so Stricklin and Jones when over to assist. Outside the door of the bar, Jones tried to calm the situation by explaining to the patron that he could not come back in. Defendant rushed up and looked like he was going to hit Jones in the back of the head, so Stricklin grabbed defendant by the top of his backpack and pulled him back. Defendant, who was intoxicated, fell to the ground. He jumped back up, extremely mad, and screamed in Stricklin's face. Stricklin explained to defendant that he worked there at Riley's and that the dispute with the other patron had nothing to do with defendant. Stricklin asked defendant to leave.

Instead of leaving, defendant screamed obscenities in Stricklin's face. Hearing the screaming, Jones intervened and told defendant to leave, but defendant remained and engaged in some pushing back and forth with Jones. Stricklin stepped in and pushed defendant to the ground. Stricklin felt out of breath and realized he had been stabbed twice. Defendant never appeared to be afraid of Stricklin throughout the incident.

Stricklin had two stab wounds on the left side of his body, one of which pierced his stomach and required surgery to repair. He was in the hospital for five or six days.

The testimony of the other participants and witnesses varied in some details.

Jones testified that, after Stricklin pulled defendant down by his backpack, Jones and Stricklin headed back to the door of the bar, but defendant pulled a pocket knife from his backpack. Jones returned and hit defendant in the face. Defendant continued to ignore the requests to leave, so Stricklin tackled defendant, at which time defendant stabbed Stricklin. Jones jumped in and grabbed the knife.

Dan Luck, the doorman on duty at Riley's that night, testified that defendant approached while Luck was dealing with the intoxicated patron who wanted to enter the bar. Defendant expressed concern about the treatment of the intoxicated patron. After Stricklin pulled defendant down by his backpack, defendant was angry, hostile, and aggressive, and did not show fear.

A bar customer, Jack Carlile, testified that defendant shoved Stricklin, and Stricklin shoved defendant back, causing defendant to fall. Defendant was angry when he got up, and he attacked Stricklin. Carlile did not see that defendant had a knife at that time and did not see defendant stab Stricklin, but he saw the knife in defendant's hand after Stricklin had been stabbed. Defendant did not appear to be afraid.

> Defendant claimed, through his attorney, that he acted in self-defense.
>
> The district attorney filed an information charging defendant with one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), with additional allegations that defendant: (1) personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)), (2) served two prior prison terms (Pen. Code, § 667.5), (3) had a prior strike conviction (Pen. Code, §§ 667, subd. (d); 1170.12, subd. (b)), and (4) had a prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)).
>
> The trial court declared a mistrial after the first jury was unable to reach a verdict.
>
> On retrial, a second jury convicted defendant of assault with a deadly weapon and found true the great bodily injury allegation. Defendant admitted the prior conviction allegations.
>
> The trial court sentenced defendant to a total state prison term of 18 years. The court imposed the upper term of four years for assault with a deadly weapon, doubled to eight years under the "Three Strikes" law. The court also imposed consecutive terms of three years for the great bodily injury enhancement, five years for the prior serious felony conviction, and two years for the prior prison terms.

(ECF No. 30-10 at 2–3); People v. Puthuff, No. C079631, 2017 WL 747630, at *1–2 (Cal. Ct. App. Feb. 27, 2017).

## II.    Procedural Background

### A.  Judgment

The trial court declared a mistrial after the first jury was unable to reach a verdict. (ECF No. 30-4 at 111.) On retrial, a second jury convicted petitioner of assault with a deadly weapon and found as true the great bodily injury allegation. (ECF No. 30-6 at 175–76.) Petitioner admitted the prior conviction allegations. (Id. at 182–84.) The trial court imposed an aggregate prison term of 18 years. (Id. at 199–202.)

## III.    State Appeal, State Habeas, and Federal Proceedings

Petitioner timely appealed his convictions, contending that the trial court improperly admitted the prior crime evidence and erred by adding to a jury instruction. (ECF No. 30-7.) The appellate court affirmed the trial court's judgment. (ECF No. 30-10.) Petitioner sought review in the California Supreme Court. (ECF No. 30-11.) On May 17, 2017, the California Supreme Court

1 summarily denied review. (ECF No. 30-12.) Petitioner sought state habeas relief before the Butte
2 County Superior Court and California Supreme Court. (ECF Nos. 30-13 & 30-15.) Both courts
3 denied the petitions. (ECF Nos. 30-14 & 30-16.)

4     Petitioner filed his initial federal habeas petition in July 2018 and a first amended petition
5 in May 2019. (ECF Nos. 1 & 18.) He filed a second amended petition, the operative petition, in
6 October 2019. (ECF No. 22.) Respondent filed an answer. (ECF Nos. 19 & 30.) Petitioner filed a
7 traverse.  (ECF No. 37.)

8     **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

9     A court can entertain an application for a writ of habeas corpus by a person in custody
10 under a judgment of a state court on the ground that he is in custody in violation of the
11 Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not
12 available for an alleged error in the interpretation or application of state law. See Wilson v.
13 Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v.
14 California, 202 F.3d 1146, 1149 (9th Cir. 2000) (stating that "a violation of state law standing
15 alone is not cognizable in federal court on habeas.").

16     This court may not grant habeas corpus relief unless the adjudication of the claim:

17
18     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

19
20     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

21 28 U.S.C. § 2254(d). For purposes of applying § 2254(d)(1), "clearly established federal law"
22 consists of holdings of the United States Supreme Court at the time of the last reasoned state court
23 decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.
24 2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent "'may be
25 persuasive in determining what law is clearly established and whether a state court applied that
26 law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th
27 Cir. 2010)). But it may not be "used to refine or sharpen a general principle of Supreme Court
28 jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam) (citing Parker v. Matthews, 567 U.S. 37 (2012)); see also Carey v. Musladin, 549 U.S. 70, 76–77 (2006). Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64.

A habeas corpus application can invoke § 2254(d)(1) in two ways. First, a state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts a holding of the Supreme Court or reaches a different result from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405–06). Second, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 120 S. Ct. at 1522; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 786–87.

A petitioner may also challenge a state court's decision as being an unreasonable determination of facts under § 2254(d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). Challenges under this clause fall into two categories; first, the state court's findings of fact "were not supported by substantial evidence in the state court record," or second, the "fact-

finding process itself" was "deficient in some material way." Id.; see also Hurles v. Ryan, 752 F.3d 768, 790–91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient, and the state court opinion may not be entitled to deference.). Under the "substantial evidence" category, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012) (quoting Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir. 2004), overruled on other grounds by Murray v. Schriro, 745 F.3d 984, 999–1001 (9th Cir. 2014)). The "fact-finding process" category, however, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146–47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc). For claims upon which a petitioner seeks to present new evidence, the petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

This court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome if "there is reason to think some other explanation for the state court's decision is more likely." Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision rejects some of petitioner's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply, and a federal habeas court reviews the claim de novo. Stanley, 633 F.3d at 860.

## ANALYSIS

Petitioner asserts three grounds for relief: (1) the trial court violated his due process rights by admitting prior crime evidence; (2) a jury instructional error deprived him of due process; and (3) ineffective assistance of appellate counsel.

### I. Admission of Prior Crime Evidence

Petitioner claims the state court violated his due process rights by allowing evidence of a prior battery to show that he did not act in self-defense. (ECF No. 22 at 30–40; see also ECF No. 37 at 5–7.) In response, respondent contends that the admission of prior crime evidence claim is procedurally barred and, alternatively, that the state court's rejection of this claim did not violate any clearly established federal law. (ECF No. 29 at 6–7.)

#### A. State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal denied this claim both as procedurally barred and on the merits.

////

////

7

**DISCUSSION**

Each of defendant's two arguments on appeal arise from the prosecution's introduction of evidence of a prior incident in which defendant struck a bar employee with a glass. The trial court admitted the evidence to show motive and intent, citing *People v. Spector* (2011) 194 Cal.App.4th 1335 (*Spector* ), which held that evidence of other crimes is admissible to show a state of mind or state of emotion in connection with the other crime, leading to an inference that defendant acted consistent with the same state of mind or state of emotion in committing the charged offense. (*Id.* at p. 1383.)

At trial, the victim of the prior crime, Eric Greenley, testified concerning the circumstances of that crime. Greenley was manager of the door staff at a different restaurant and bar in downtown Chico. On the evening of October 4, 2012, two years before the crime in this case, Greenley asked his door staff to ask customers to take skateboards and motorcycle helmets out of the premises because the business was transitioning from a restaurant to a bar for the evening. Defendant was there and had a motorcycle helmet with him. When defendant was asked to take his motorcycle helmet out of the bar, he became upset because he had just bought a beer and did not want to leave. Greenley told defendant he could finish his beer and then leave with the helmet. Defendant did not appear to have a problem with that plan, so Greenley walked away. Soon after that, however, defendant began making a commotion. Defendant argued with the bar staff, so Greenley told defendant that he needed to leave. Defendant grabbed a glass from a table and hit Greenley in the head with it. After a scuffle, Greenley and his staff held defendant down until the police came and arrested him. Two or three weeks later, Greenley saw defendant at Jamba Juice. Defendant said Greenley's name and added, "I know who you are," in a threatening manner.

In its pretrial ruling, the trial court found under Evidence Code section 1101, subdivision (b), that the prior crime evidence was relevant to defendant's claim that he acted in self-defense because the circumstances of the prior crime provided a reasonable inference that defendant acted out of a common motive to attack a bar employee or a common emotion of dislike toward bar employees. The court also found that the prior crime evidence was more probative than prejudicial under Evidence Code section 352.

**I**

*Prior Crime Evidence*

Defendant contends that the trial court improperly admitted the prior crime evidence at the second trial. (The prior crime evidence was not introduced at the first trial, which ended in a mistrial.) We conclude the contention is without merit because: (1) defendant forfeited the contention by failing to base it on the evidence before the trial court when it ruled and (2), in any event, the evidence was admissible to show motive.

8

### A. *Forfeiture*

In making his argument that the evidence was improperly admitted, defendant relates the evidence introduced at trial after the trial court ruled that it was admissible. He makes no citation to the record concerning what evidence or proffer of evidence was before the trial court when it ruled on the prosecution's motion to admit the evidence. While he notes that the prosecutor made the motion to admit the evidence and recounts some of the arguments made by counsel, the facts of the prior crime that he relies on were elicited at trial after the trial court made its ruling.

When we review a trial court's ruling, we do so based on what was known to the trial court at the time it made the ruling. (*People v. Mason* (1991) 52 Cal.3d 909, 933.) When an appellant fails to base his argument on the facts known to the trial court and fails to cite to the record showing what the trial court knew, the contention is forfeited because it is not based on the proper facts. (See Cal. Rules of Court, rule 8.204(a)(1)(C) & (2)(C); *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Therefore, defendant forfeited his contention concerning admission of evidence because he did not cite to and rely on the facts known to the trial court when it ruled on the motion to admit the evidence.

### B. *Merits*

Even if we were to reach the merits of this argument, we would find that it is without merit because the trial court did not abuse its discretion by admitting the prior crime evidence.

Evidence Code section 1101, subdivision (a), provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." However, subdivision (b) of that section provides that a specific instance of a person's conduct is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity ...) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) Here, the trial court admitted the evidence of defendant's prior crime to show motive.

"When the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity. A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to establish intent. [Citations.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance. [Citations.] The decision whether to admit other crimes evidence rests within the

9

discretion of the trial court. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 23; see also *People v. Kelly* (2007) 42 Cal.4th 763, 783.)

" ' "[W]hen the commission of a criminal act [ (the crime for which defendant is on trial) ] is a disputed issue, evidence of motive may become relevant to that issue. Motive is itself a state-of-mind or state-of-emotion fact. Motive is an idea, belief, or emotion that impels or incites one to act in accordance with his state of mind or emotion. Thus, evidence, offered to prove motive, that defendant committed an uncharged offense meets the test of relevancy by virtue of the circumstantial-evidence-reasoning process that accepts as valid the principle that one tends to act in accordance with his state of mind or emotion." [Citation.]' [Citations.]" (*Spector, supra,* (2011) 194 Cal.App.4th at pp. 1382–1383, italics omitted; see also *People v. Walker* (2006) 139 Cal.App.4th 782, 803 [evidence of prior sexual assaults tended to show defendant's " 'common motive of animus against prostitutes resulting in violent batteries interrupting completion of the sex act' "].)

"Although motive is not an element of any of defendant's crimes, 'the absence of apparent motive may make proof of the essential elements less persuasive ....' [Citation.]" (*People v. Davis* (2009) 46 Cal.4th 539, 604.)

In *Spector*, the trial court instructed the jury on the definition of "motive" as it relates to other crimes evidence. In that case, the prosecution introduced evidence of the circumstances of defendant's seven prior assaults on women in circumstances similar to the killing of the victim in the case on trial. The court defined "motive" as " 'an emotion that may impel or incite a person to act in accordance with his state of emotion.' " (*Spector, supra,* 194 Cal.App.4th at p. 1382, italics omitted.) The defendant in *Spector* argued that this definition was " 'wholly at odds with the term's legal definition in the context of section 1101(b) evidence.' " (*Ibid.*) But the Court of Appeal disagreed. It determined that the definition was accurate and applicable to the facts of the case, reasoning: "In every one of the seven assaults [prior crimes], Spector was extremely angry or enraged. And during five of the seven incidents, Spector manifested a significant mood swing. Hence, there was evidence Spector had exhibited an extremely heightened emotional state during these prior assaults." (*Id.* at p. 1384, fns. omitted.) Since the same facts concerning Spector's emotional state were present in both the prior crimes and the present crime, the evidence tended to prove the defendant's guilt. The court therefore concluded that the definition of motive in the trial court's instruction was not erroneous. (*Id.* at pp. 1384–1385.)

For reasons similar to those explained in *Spector*, the trial court's admission of the prior crime evidence in this case was proper. Here, the prior crime tended to show defendant's animus toward bar employees and his violent outbursts when those employees asked him to do something, especially to leave. For that reason, admission of the prior crime evidence made defendant's self-defense argument less persuasive because the jury could conclude that defendant acted

10

> with a common motive in the two instances—that is, to attack bar employees when asked to leave.
>
> Defendant, however, argues that there were "critical dissimilarities" between the prior and current crimes that "undermined any relevance of the former to the latter." To the contrary, the dissimilarities between the two crimes did not undermine the relevance of the prior crime to the motive behind the current crime. Defendant claims: (1) defendant initiated contact in the prior crime but did not initiate contact in the current crime; (2) the victim in the current crime had been drinking, while the victim in the prior crime had not; (3) defendant said he felt disrespected during the events leading to the current crime, while he made no such expression during the events leading to the first crime; and (4) the two incidents occurred about two years apart.
>
> These dissimilarities are inconsequential to the analysis concerning the trial court's admission of the evidence. As noted, the evidence was admissible to support the prosecution's arguments concerning motive. Defendant was free to argue the dissimilarities to the jury, but those dissimilarities were insufficient to require exclusion of the evidence.
>
> Defendant also claims that the prejudicial effect of the prior crime evidence far outweighed its probative value and should have been excluded under Evidence Code section 352. We disagree. "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." (*People v. Lopez* (1969) 1 Cal.App.3d 78, 85.) There was nothing so shocking about the prior crime evidence as to require the trial court to exclude it because it was too prejudicial.

(ECF No. 30-10 at 4–9.)

**B. Discussion**

As a threshold matter, respondent argues that petitioner's claim is procedurally barred. Although procedural issues are often addressed before the merits, they need not be. The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits. Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."). "Procedural bar issues are not infrequently more complex than the merits issues" and "it

may well make sense in some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. 2010). Because this claim can be resolved on the merits, this Court declines to decide whether a procedural bar precludes petitioner from obtaining habeas relief.

On the merits, to the extent that petitioner challenges the admissibility of Eric Greenley's testimony regarding the prior crime, habeas relief is unavailable. State law determines whether evidence is admissible. See Estelle, 502 U.S. at 67–68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Here, the state court concluded that "the dissimilarities between the two crimes did not undermine the relevance of the prior crime to the motive behind the current crime." (ECF No. 30-10 at 8.) The evidence tended to show his "animus towards bar employees and his violent outbursts when those employees asked him to do something, especially to leave." (Id.) The state court determined that "admission of the prior crime evidence made [petitioner's] self-defense argument less persuasive because the jury could conclude that [he] acted with common motive in the two instances—that is, to attack bar employees when asked to leave." (Id.)[1] Any errors of state law made by the state court do not warrant federal habeas relief. See Estelle, 502 U.S. at 67–68. "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).

Under the Antiterrorism and Effective Death Penalty Act, "even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir. 2021). Because the Supreme Court has "not yet made a clear ruling that admission of irrelevant or overly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ," Holley, 568 F.3d at 1101, this Court cannot conclude that the state court's

---

[1] Petitioner cites two cases to support his argument that a prior assault or battery conviction is immaterial to a claim of self-defense. (ECF No. 22 at 34.) These opinions are from the Fourth and Tenth Circuit, and out-of-circuit precedent is not binding.

ruling was contrary to, or an unreasonable application of, clearly established federal law. See generally Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam). The Supreme Court has also has never held that propensity evidence violates due process. See Estelle, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 866–67 (9th Cir. 2006).  This Court recommends denying habeas relief on this claim.

## II.     Jury Instructional Error

Petitioner claims that the trial court erred by modifying the jury instruction to include the definition of motive. (ECF No. 22 at 8, 40–46; see also ECF No. 37 at 8–9.) In response, respondent argues that the instructional error claim does not raise a federal constitutional issue, and the state court's rejection of the claim does not contravene clearly established Supreme Court precedent. (ECF No. 29 at 9.)

### A. State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal considered and rejected the claim:

> Defendant contends that the trial court erred by adding text to an instruction on motive, using the definition of motive from *Spector*. As noted above, the court in *Spector* held that the language was accurate and applicable to the facts. (*Spector, supra,* 194 Cal.App.4th at p. 1384.) The trial court's use of the same definition of motive in this case also was not erroneous.
>
> The trial court instructed the jury concerning motive and added the definition from *Spector*, as follows: "If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant had a motive to commit the offenses alleged in this case. *For the purposes of this instruction, motive is an emotion that may impel or incite a person to act in accordance with his state of emotion.*" (Italics added.) The italicized part of the instruction is the part to which defendant objects.
>
> The court in *Spector* determined that this definition of motive was proper as a jury instruction. Defendant asks us to disagree with *Spector* and find that the definition of motive in the instruction was unnecessary and confusing. His only argument is that the CALCRIM instruction on motive (CALCRIM No. 375) was sufficient without the added definition. This argument fails to

13

> convince us, however, that the addition of the definition confused or misled the jury.
>
> "In assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled. [Citations.]" (*People v. Tate* (2010) 49 Cal.4th 635, 696.) Here, the addition of the definition of motive to the jury instruction did not mislead the jury.

(ECF No. 30-10 at 9.)

### B. Discussion

Like on direct appeal, petitioner claims the trial court erred by modifying CALCRIM No. 375 to include a definition of motive as "an emotion that may impel or incite a person to act in accordance with his state of emotion." (ECF No. 22 at 41.) The state court disagreed, concluding that the added motive definition was correct under state law. (ECF No. 30-10 at 9.) It is axiomatic that a state court's interpretation of state law is binding on a federal habeas court. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam); Estelle, 502 U.S. at 71–72 ("Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to that CALJIC model.") Petitioner cannot transform a state law issue into a federal issue by blanketly claiming a violation of due process. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). Because this Court cannot second-guess the state court's interpretation of state law, this argument fails.

On the merits, federal habeas relief for a jury instruction claim is only available if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (In non-capital cases, "we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). It must violate a constitutional right. Id. The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of instructions as a whole and the trial record." Estelle, 502 U.S. at

72 (quoting Cupp, 414 U.S. at 147). The Supreme Court has cautioned that there are few infractions that violate fundamental fairness. Id. at 72-73; see, e.g., Waddington v. Sarausad, 555 U.S. 179, 191–92 (2009); Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) ("Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"); Jones v. United States, 527 U.S. 373, 390–92 (1999); Gilmore, 508 U.S. at 344.

This is not one of those rare cases. The state court concluded that the "definition of motive to the jury instruction did not mislead the jury." (ECF No. 30-10 at 9.) The trial court instructed that the jury "may, but are not required to, consider this evidence for the limited purpose of deciding whether or not the defendant had a motive to commit the offenses alleged in this case." (ECF No. 30-1 at 199.) Additionally, the trial court provided a limiting instruction:

> In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses.
>
> Do not consider this evidence for any other purpose.
>
> Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.
>
> If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Assault with a Deadly Weapon or that the Great Bodily Injury has been proved. The People must still prove the charge and special allegation beyond a reasonable doubt.

(Id.) In CALCRIM No. 370, which petitioner does not challenge, the trial court instructed that "[t]he People are not required to prove that the defendant had a motive to commit the crime charged. In reaching your verdict you may, however, consider whether the defendant had a motive. Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty." (Id. at 197.) Because it was not objectively unreasonable for the state court to conclude that the ailing instruction did not mislead the jury, this Court recommends denying habeas relief on this claim as well.

### III. Ineffective Assistance of Appellate Counsel

Lastly, petitioner claims that his appellate counsel was ineffective because he did not cite to and rely on facts known to the trial court when ruling on the motion to admit evidence of prior crimes. (ECF No. 22 at 5, 29–30; see also ECF No. 37 at 4, 7–8.) This argument is derived from the state appellate court's holding that petitioner forfeited his admission of evidence claim. (ECF No. 30-10 at 5 ("When an appellant fails to base his argument on the facts known to the trial court and fails to cite to the record showing what the trial court knew, the contention is forfeited because it is not based on the proper facts…Therefore, defendant forfeited his contention concerning admission of evidence because he did not cite to and rely on the facts known to the trial court when it ruled on the motion to admit the evidence.")) In response, respondent argues that petitioner's ineffective assistance claim is untimely. (ECF No. 29 at 7–8.) Alternatively, respondent asserts that the state habeas court's denial of this claim was reasonable, and counsel's alleged ineffectiveness does not excuse the procedural default. (Id. at 8–9.)

#### A. State Court Opinion

Petitioner raised this claim in his state habeas petitioner before California Supreme Court. (ECF No. 30-15.) The California Supreme Court summarily denied the petition. (ECF No. 30-16.)

#### B. Discussion

Respondent argues that petitioner's ineffective assistance of counsel claim is untimely because it was raised after the federal limitations period expired and does not relate back to petitioner's timely claims. (ECF No. 29 at 7–8.) This Court does not decide this issue because, assuming the claim was timely, it fails on the merits.

To state an ineffective assistance of counsel claim, petitioner must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). For the prejudice

16

prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This standard applies to a claim of ineffective assistance of appellate counsel. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000); Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473. When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." Richter, 562 U.S. at 105.

The state court could have reasonably rejected this claim as well. Petitioner's claim hinges on the assertion that had his appellate counsel effectively briefed the prior crimes evidence argument, the state appellate court would have decided the issue in his favor. This assertion, however, is unsupported by the record. On direct appeal, the state appellate court found that the claim was forfeited, and alternatively, would have failed on the merits. (ECF No. 30-10 at 6 ("Even if we were to reach the merits of this argument, we would find that it is without merit because the trial court did not abuse its discretion by admitting the prior crime evidence.")) As a result, even if appellate counsel was deficient in briefing the issue on appeal, there is a reasonable argument that counsel's deficient performance would not have prejudiced his defense. The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. This Court recommends denying habeas relief on petitioner's ineffective assistance of appellate counsel claim.

### CONCLUSION

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court decision on any claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts.

////

It is RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 22) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  April 5, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE